## Case No. 15,216

### UNITED STATES v. GLEASON.

[1 Woolw. 128.] [1]

Circuit Court, D. Iowa. Oct. Term. 1867.

FEDERAL OFFICERS—DISCHARGE OF DUTY—ARREST OF DESERTERS—INDICTMENT FOR MURDER—CASUAL RENCOUNTER—DYING STATEMENTS—REASONABLE DOUBT.

1. Parties employed by proper officers to arrest deserters. when, having come into a vicinage on such service. they are returning therefrom to another place. to obtain assistance to effectually discharge their duty, are employed in arresting deserters within the meaning of the act of 24th February, 1864.

[Cited in Re Neagle, 135 U. S. 57, 10 Sup. Ct. 665.]

2. It is not necessary that such parties be. at the time. in the immediate act of making an arrest.

[Cited in Re Neagle, 135 U. S. 57, 10 Sup. Ct. 665.]

3. The purpose of the act is to protect the life of the person so engaged. and this protection continues so long as he is employed in a service necessary and proper to the discharge of his duty in that behalf.

[Cited in Re Neagle. 135 U. S. 57, 10 Sup. Ct. 665.]

4. Parties charged by proper officers with the duty of arresting persons especially named. as deserters. cannot make their obedience to their

---

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

orders dependent upon any inquiry on their part, whether the persons to be arrested be, in fact, deserters or not.

5. The protection which the law affords to parties executing it, does not depend upon the legal guilt of the persons charged as deserters.

6. If a person assault parties charged with this service when they are not engaged therein, he is not amenable to the federal laws, however malicious the deed may be, and even though it result in death.

[Cited in U. S. v. Yellow Sun, Case No. 16,-780; Tennessee v. Davis, 100 U. S. 279; Ex parte Yarbrough, 110 U. S. 660, 4 Sup. Ct. 156.]

7. In order to the guilt under this act of the person making the assault, he must be moved thereto by some motive having relation to the service in which the party assaulted was engaged.

8. It is not enough that the offence was committed in a casual rencounter, which would have occurred if the person assaulted had not been engaged in that service.

9. It is not necessary that the accused should have personally made the assault. It is enough if, with the spirit above mentioned, he brought it about, or aided in bringing it about.

10. The character of the dying statements of a person who has been killed, their consistency with established facts, and all the circumstances of the dying man, are to be considered by the jury in determining the weight to which his account of the transaction is entitled.

11. If a person, knowing himself to be suspected of a crime, makes contradictory statements with reference to it, the fact has not the effect, as in the case of an ordinary witness, of neutralizing his testimony.

12. It is reasonable to assume that if such person withholds the truth, he does so because it is unfavorable to his innocence.

13. The effect of statements made by a party against his interest, cannot be avoided by contradictory statements.

14. Before finding a defendant guilty of murder, the jury should be satisfied of his guilt beyond a reasonable doubt.

15. Such doubt is not every possible doubt, however slight, or however unfounded, such as beset some minds on all occasions.

16. It should be founded on something connected with the case, as disclosed by the testimony, which leaves in the mind a rational uncertainty as to guilt not removed by any other matter in the testimony.

This was the trial before the court and jury of the defendant upon an indictment for murder. The provost marshal of the United States army, for the district of Iowa, with headquarters at Grinnell, in that state, employed J. L. Bashore and J. M. Woodruff to arrest Samuel Bryant, Joseph Robertson, and Thomas C. M'Intire, as deserters from the service. While proceeding on this service, these officers were met by the defendant, who expressed a willingness to aid them in their employment. He went at once to the place where the alleged deserters were. On the way, he declared to all persons whom he met his hostility to the law, and to the execution of it by the officers, whom he declared his readiness to kill. A large and excited crowd collected, and the officers, being unable to secure the deserters, started on their return to headquarters to procure the force

necessary to execute the law. They were followed by the accused and two other persons, were overtaken, and killed. [See Case No. 15,215.]

Mr. Browning, Dist. Atty., for the Government.

Mr. Severe, for defendant.

MILLER, Circuit Justice (charging jury). After several days of patient and careful investigation in this case, and after the able arguments of counsel for the government and for the prisoner, it becomes the duty of the court to give you a statement of the law which should govern you in deciding concerning the guilt or innocence of the accused. Section 12 of the act of congress of February 24, 1864, under which the defendant is indicted, was passed for the purpose of protecting the lives and persons of the officers and agents of the government, when engaged in the discharge of the duties by that act imposed. Experience had proved this to be a dangerous service, on account of a disposition on the part of evil-disposed persons in various parts of the country to resist the due enforcement of the law for calling out the military force of the nation. That section, so far as applicable to the case before us, enacts, that if any person shall assault, obstruct, hinder, or impede any officer or other person employed in arresting or aiding to arrest any spy or deserter from the military service of the United States, if such assaulting, obstructing, hindering, or impeding shall produce the death of such officer or other person, the offender shall be guilty of murder, and upon conviction thereof, shall be punished with death. The defendant, Michael Gleason, is charged, in various forms, in this indictment, with assaulting J. L. Bashore and J. M. Woodruff, with intent to hinder and obstruct them while they were engaged in the business of arresting Samuel Bryant, Joseph Robertson, and Thomas C. M'Intire, who were deserters from the military service of the United States; and that said assault occasioned the death of the said Woodruff and Bashore.

Upon the question whether Bashore and Woodruff were killed by a violent assault made upon them at the time and place alleged in the indictment, you can experience no difficulty.

You are next to determine whether they, or either of them, were employed in arresting, or aiding to arrest, Samuel Bryant, Joseph Robertson, and Thomas C. M'Intire, or either of them, as deserters from the military service of the United States, when this assault was made. Upon the subject of their employment, you have the records of the provost marshal's office of the district in which the transaction occurred, and their statements of the business in which they were engaged, as declared by themselves to the prisoner, and as detailed by the prisoner to various persons.

It is claimed by the counsel for the defendant, that if the parties killed had been so engaged. and had come to that neighborhood with the purpose of arresting the supposed deserters. but at the moment of the assault, had abandoned the intention of making the arrests at that time, and were returning to headquarters at Grinnell, with a view to making other arrangements for arrest at another time, they were not so engaged as to bring the case within the law. But this is not a sound construction of the statute. The court instructs you, upon that point. that if the parties killed had come into that neighborhood with intent to arrest the deserters named. and had been employed by the proper officer for that service. and were. in the further prosecution of that purpose, returning to Grinnell with a view to making other arrangements to discharge this duty, they were still employed in arresting deserters within the meaning of the statute. It is not necessary that the party killed should be engaged in the immediate act of arrest: but it is sufficient if he be employed in and about that business when assaulted. The purpose of the law is to protect the life of the person so employed. and this protection continues so long as he is engaged in a service necessary and proper to that employment.

The counsel for the defendant also asks in this connection. that the court shall instruct you that the persons whom Bashore and Woodruff were employed to arrest. must be proved clearly to have been deserters. before you can find the defendant guilty. This instruction we must refuse. If those officers were ordered by their superiors to arrest persons specifically named as deserters. they were bound to use their best efforts to execute their orders. They had no right to make their obedience dependent upon any inquiry which they could make as to whether the persons to be arrested were deserters or not. The protection which the statute intended to throw around those officers does not depend upon the legal guilt of the parties charged with desertion. If it were so, the jury would be required to try two issues of guilt or innocence, depending upon totally different transactions. and involving parties not before the court. Such a construction would defeat the manifest intention of the law. We have only to suppose that congress intended that if persons who were engaged in arresting parties as deserters were killed as in the act set forth. the one committing the offence should be guilty of murder. This makes the language of the act consistent with its manifest purpose. In giving it this construction we do no violence to the language of the statute, and are fully supported by the necessity of giving effect to its spirit and meaning. It is therefore not essential to conviction to prove that, in point of law or fact. Bryant, Robertson, and M'Intire were deserters.

If you find, in investigating this branch of the subject, that Woodruff and Bashore, when they were assaulted. were not employed in arresting or aiding to arrest deserters; then, according to the principle already stated, however wicked and malicious may have been the act of homicide, the defendant must be acquitted; the laws of the federal government do not reach his case. and he is amenable only to the laws of the state of Iowa. But if you are of opinion that the parties killed were employed in arresting deserters, as charged in the indictment. according to the rules which we have stated to enable you to determine that fact. you will then inquire into the connection of the defendant with the transaction. On this subject you are instructed that. in order to find this person guilty. it is not enough that you should find that the assault was a mere casual rencounter. which would have taken place all the same. if the persons killed had not been employed in a business relating to the enrolment. or to the arrest of deserters. You must find that the assault was prompted by some motive which had relation to the service in which the deceased was engaged. and grew out of hostile feelings engendered thereby. You must also find that the accused contributed to the assault with this motive or sentiment. You must find that he, with such feelings, or with the object of obstructing or hindering persons engaged in the discharge of the duty of arresting deserters, actually and personally assaulted them. or one of them; or by some active means efficiently aided in bringing about the assault which resulted in the homicide. It is not necessary to the defendant's guilt that he should have made the assault personally. If, with the motive above mentioned. he intentionally brought about, or assisted in bringing about. the assault in which the deceased were killed. it is the same as if he had made it himself. If, on the other hand, he had no design or intention to hinder or obstruct these officers in the discharge of their duties. or if he was present by mere accident when the assault was made, and took only such part in the affair as he might reasonably do for self-defence. then he is not guilty.

The testimony which tends to develop the prisoner's connection with and relation to the transaction which resulted in the death of these officers. is largely composed of the dying declarations of Bashore. and of statements alleged to have been made by the prisoner himself. In both cases. these statements come to the jury through witnesses who profess to have heard them. With regard to them both. you are to consider the imperfection of human memory, and the lapse of time since the conversations occurred which are detailed: and you are also. in reference to any discrepancies in the detail of these conversations by the witnesses who heard them. to remember how seldom it is that every person present hears or remembers all that is said, or receives precisely the same impres-

sion from hearing the same conversation. Bashore seems to have been fully aware of his approaching dissolution, and to have made his statements with a full sense of the awful responsibility of his situation. It is true that the absence of cross-examination leaves out an important agent in ascertaining all the truth, but it is equally true that in his situation there seems to be nothing to detract from the probability that he desired to tell nothing but the truth. The clearness or obscurity of his statements, their consistency with each other, and with other facts proved in the case; the condition of his mind for accurate observation and for correct recital of the things observed; and as well, also, the fact that he is the only person, except the defendant, whose story of the immediate occurrences at the time of the homicide is known to us,—are all to be considered by you in determining the degree of credit to which his testimony is entitled. Of the importance of these statements there can be no doubt. The weight to be given them, in your estimation of the whole case, is for you, and not for the court, to determine. The accounts of these transactions, given by the prisoner at various times, differ from each other, and are, in some important particulars, contradictory; and the statements of what he did say are not always identical when detailed by different witnesses who profess to have heard them. Considering the lapse of time and the exciting nature of the occasion, it is not remarkable that the witnesses should vary somewhat in their recollection of what was said. The defendant, however, was aware that he was suspected of the murder, and was under no obligation to make any statement about the matter. The fact that he voluntarily made contradictory statements, cannot, as in the case of an ordinary witness, have the effect merely of neutralizing his testimony, as is contended by his counsel. On the contrary, the jury must be left to draw such inference from it as, in view of all the circumstances, may seem just. It is reasonable to assume that if he withheld the truth, he did so because it might not be favorable to his innocence. It is also to be considered that when a party has voluntarily made statements against his own interest, which are always entitled to great weight, he cannot, by subsequently contradicting them, or by varying his account of the transaction, destroy the effect of such admissions. Nevertheless, the general looseness, inaccuracy, or contradictory character of the defendant's accounts of the transaction, may be taken by the jury for what they may be worth, as affecting the credence to be given to any part of his story.

Before you find the defendant guilty, you should be convinced of his guilt beyond a reasonable doubt. But it is not every possible doubt, however slight or however founded, which should prevent a verdict of guilty. The doubt, to have that effect, must be a reasonable one; that is, it must be founded on some-thing growing out of the state of the testimony, which leaves a rational uncertainty as to his guilt, and which nothing else in the case removes. The degree of conviction in the minds of the jury of the guilt of the prisoner, should be something more than a bare preponderance of belief; something more than the probability of guilt merely outweighing the probability of innocence. The mind should be able to rest reasonably satisfied of the guilt of the accused before a verdict of that character is given. On the other hand, mere possibilities of innocence, the doubts, however unreasonable, which beset some minds on all occasions, should not prevent such a verdict. If the whole testimony in the case produces in your minds this degree of conviction of the guilt of the prisoner, it is your duty to say so by your verdict. If it does not, it is your duty to say "Not guilty."

The jury retired, and after an absence of about one hour, returned with a verdict of "Guilty." At the request of the defendant's counsel, the jury were then polled, and each juror answered the usual question affirmatively. The convict was remanded to prison. Thereafter, being called to receive his sentence, he spoke for some minutes, professing to detail his connection with the death of Bashore and Woodruff, and declaring his innocence in the premises. Judge MILLER then pronounced sentence, as follows:

"Michael Gleason, you are charged at this bar, and before the country, with the crime of murder. A jury of honest and faithful men, after a full and fair investigation of your case, have said that you are guilty. You have had three years to prepare for this trial, and to secure, at the expense of the government, all the testimony which you could find in your behalf. You have had the aid of able, experienced, faithful, energetic counsel, who have done all that could be done in your defence. You have had a fair, an impartial, and conscientious trial. I have myself no doubt of your moral and legal guilt; and I feel authorized to say that the judgment of my associate, who has been with me through the trial of the case, concurs with mine. You met these two men, who confided to you their purpose to arrest deserters. You went immediately to a place in the neighborhood, where these deserters were, with a large crowd of other persons, many of whom were doubtless known to you as sympathizing with them. On your way you published to every person you saw, the presence of these officers in the neighborhood, and the object of their visit. You declared on each occasion your hostility to their purpose, and your readiness to join in resisting, even to death, although you had professed to them that you would assist them. When you reached the crowd, you proclaimed aloud in the hearing of all, the presence of these men, and the object of their visit; and declared that you would be one of three men to take or kill them.

Very shortly after this. you and two men of desperate character left the crowd. going in the same direction, and about the same time. You were next seen lying beside one of your victims, with your gun broken over his head; your pistol on the ground freshly discharged; and your other victim dead a few rods off. You were one of the three who killed those men, as you said you would be; and you killed them without any cause of offence against them personally. Your only motive was hostility to the law which they were charged to enforce. You are not a native of this country, but. as your counsel have stated. you had taken an oath that you were favorable to its government. You came from a country where men in your station in life complain, perhaps justly. that they are oppressed by laws which they have no voice in making. You have come to a country where your vote at the ballot-box is as potential in making or modifying the laws, as that of the judge who now addresses you. Not content with this peaceable mode of changing a law which you did not like, you permi++ed your hostility to it to incite you to mt rder the persons charged with its enforcement. Your present condition is a striking admonition that this cannot be permitted in a free country any more than in a despotism. The penalty which the law attaches to your offence is one which my private judgment does not approve; for I do not believe that capital punishment is the best means to enforce the observance of the laws, or that, in the present state of society, it is necessary for its protection. But I have no more right, for that reason, to refuse to obey the law, than you had to resist it. I therefore do pronounce upon you its sentence: That you be committed to the custody of the marshal of this district, by whom you shall be held in close imprisonment until the 27th day of December next; and that on that day you be hanged by the neck until you are dead; and may God. the wise Governor of the universe. who is equally the Father of the judge who pronounces this sentence, and the criminal to whom it is addressed. have mercy on you.

As to statements of person in extremis. see [Travelers' Ins. Co. v. Mosley] 8 Wall. [75 U. S.] 397.